## COLEGROVE et al. v. GREEN et al.
### No. 46 C 46.

District Court, N. D. Illinois, E. D.

Jan. 29, 1946.

Urban A. Lavery, of Chicago, Ill., for plaintiffs.

George F. Barrett, Atty. Gen. of Illinois, and William C. Wines, Asst. Atty. Gen. for defendants.

Before EVANS, Circuit Judge, and IGOE and LABUY, District Judges.

PER CURIAM.

Plaintiffs bring this suit as citizens of the State of Illinois to secure a declaratory decree, and relief incident thereto, against the defendants who, as officials of the State of Illinois, are charged with the responsibility of preparing ballots and conducting elections in said state, including the election of Congressmen to represent the electors of said State of Illinois in the lower house of the Congress of the United States. Such election will occur in Nov-

ember, 1946, and petitioners are specifically concerned with the printing of ballots which are to contain the names of the candidates to be thus voted for at said election, and yet who must win the right to appear as candidates at said November election by first winning in a primary election which is soon to be held. It is through control of the printing of ballots to be used at the primary that plaintiffs hope to secure their legal rights.

Specifically the plaintiffs' grievance lies in the failure of the State of Illinois to so apportion the congressional districts as to give equality of voting power to the citizens of said state. It is alleged, and if not admitted, not denied, for example, that in one district a voter has the voting strength of eight voters in another district. Petitioners base their argument on the sound and elementary proposition that all the electors should have an equal voice and that none should be disfranchised. A failure to redistrict the State of Illinois after each census results in either disfranchisement or inequality of franchise strength. In short, the voice of one citizen carries more weight than that of another in another district, solely because the State of Illinois has refused and continues to refuse to reapportion the state in accordance with the population facts showing of the last census. Not only has the State of Illinois failed to redistrict the state according to population after the last census, but it has failed to do so for over forty years. Its action is apparently deliberate and defiant of both Federal and State Government and the principles upon which they are founded.

Defendants do not defend this action. Their defense is that this gross misrepresentation of Illinois citizens is due to certain legislators who, to retain political strength greater than they are entitled to, or would be entitled to, if equality in representation occurred, refuse to act or to grant relief to this existing disgraceful situation in Illinois.

Defendants rely chiefly on their alleged unusual and unique immunity from legal process, both state and Federal. The citizens have sought relief in both tribunals. As representative of the legislative branch, the legislature of Illinois has taken a defiant and arbitrary position quite at variance with the theory of a representative democracy.

Their refusal to grant relief is as obstinate as it is unpatriotic. It violates the spirit of citizen obligation to state and Federal Government which is as surprising as it is happily unusual. It is apparently modeled after the action of South Carolina in the days of President Jackson. Its continuance provokes, if it does not invite the resort to arms if appeals to reason or the patriotism of the individuals are too long ignored.

■ There can be no doubt that an elector, such as any one of the plaintiffs, has a right to vote for Federal representatives in the Illinois primary. His right to so do stems from the Federal Constitution. United States v. Classic, 313 U.S. 299, 61 Ct. 1031, 85 L.Ed. 1368.

■ The citizen's right in this respect is similar to other civil liberty rights expressly guaranteed by the Constitution. Quite as clearly, though by necessary implication instead of by express provision, is the right of the citizen to be equally represented in Congress. United States v. Classic, supra. In fact, equality of representation is such an essential of representative government that attempt to justify its violation has not been seriously attempted. Donovan v. Suffolk County, Apportionment Com'rs, 225 Mass. 55, 113 N.E. 740, 2 A. L. R. 1337.

■ It follows therefore that a denial or impairment of a citizen's right to choose a representative on terms of equality with other qualified voters in other districts is prohibited by the Constitution. It is violative of the basis of this Government. It is contrary to the theory of the Constitution and its provision for a Congress which is to legislate for the people of the United States on Federal questions.

Plaintiffs' contention, not seriously disputed by the defendants, is that the Illinois Reapportionment Act is unconstitutional. It abridges plaintiffs' privileges and rights within the meaning of the Fourteenth Amendment. It denies to plaintiffs their right to liberty and property without due process of law.

Defendants' answer is expressed briefly and tersely. "Granted—What of it?" "The legislature of the State of Illinois is not subject to Federal Court process or jurisdiction. Likewise, it can, with immunity, defy the Illinois state courts."

Defendants' dispute of Federal Court jurisdiction is predicated upon their contention (a) that there is no Federal statute in existence now which requires approxi-

634

mate equality in population of Congressional districts. (b) A Federal court of equity is without jurisdiction to interfere by injunction or otherwise with an election or other purely political question. (c) The Federal Court is without jurisdiction to proceed against the State of Illinois because prohibited by the doctrine of sovereign immunity. (d) Defendants are immune from coercion by process or adjudication in respect to Federal action. (e) It is further asserted that even though jurisdiction existed, this court should forebear to exercise it because of practical difficulties and moreover it would be an unwise exercise of discretion. (f) They also contend that the somewhat recently enacted Declaratory Judgment Statute, enacted by Congress, 28 U.S.C.A. § 400, did not extend the jurisdiction of a court of equity which is still confined to those equity suits of which a court of equity had jurisdiction before the enactment of this statute.

When this matter was argued, January 25th, this court, being desirous of eliminating all motions and objections to an early disposition of the questions which would permit of a final judgment and of a review of all questions by the United States Supreme Court, denied the defendant's motion to dismiss.

We did so without passing on the legal questions raised and ably argued by counsel for the defendants.

The pleading situation is now such that we can and should meet and dispose of the points upon which defendants rely.

 Our study of the opinion of the Supreme Court in the case of Wood v. Broom, 287 U.S. 1, 6, 53 S.Ct. 1, 77 L.Ed. 131, has resulted in our reaching a conclusion contrary to that which we would have reached but for that decision. We are an inferior court. We are bound by the decision of the Supreme Court, even though we do not agree with the decision or the reasons which support it. We have been unable to distinguish this case and as members of an inferior court, we must follow it. Only the Supreme Court can overrule that decision.

Although that decision was by a five to four vote of the members of the Supreme Court, the opinion of the four dissenters gives no comfort to the plaintiffs. While they would not dispose of the case on the ground that the Act of Congress there under consideration did not call for equality

in population and therefore is not a necessary requisite to a valid apportionment, they are of the opinion that the appeal should be dismissed for want of equity. On the ground of lack of equity the four dissenting judges spoke before the enactment of the Declaratory Judgments Act. It in no way gave consideration to the Enforcement Act of 1870, 16 Stat. 140, or of the rights that arose thereunder. We might assume that the grounds for affirmance set forth in the dissenting opinion were rejected by the majority opinion, but we can hardly assume that the law as announced by the majority is not the law governing us.

The majority view holds squarely that Sec. 3, of the Act of August 8, 1911, 2 U. S.C.A. § 3, which required districts to be of contiguous and compact territory and contain as nearly as practical an equal number of inhabitants, is not effective today. Subsequent enactments by implication repealed Sec. 3 of the Act of 1911 and they do not contain any similar provision respecting equality in population of the districts.

In the absence of this decision we would assume that such requirement arose necessarily from the Constitution. Inequality in population of the districts is so contrary to the spirit of the Government and of the Constitution that we would assume it was a required condition to representation in the Congress of the United States. There is little or no difference between an unequal voice in election of members to Congress and a denial altogether of participation in the election of Congressmen. It is at most a matter of degree. The right to vote, however, is not one of those boasted guarantees of the Constitution, if it appears that one voter has eight times as many votes as another.

If the district defined by the state legislature provides that a Congressman shall be elected in one district with eight times as many citizens as in another district, we fail to see how they could not provide that such district should not have representation at all. Such is the inevitable result of a doctrine which denies equality as a basis for congressional representation.

However, we think it is our plain, clear duty to follow the decision of the Supreme Court in this case. The case is squarely in point. It seems to have been thoroughly considered. Only one of the nine judges, the Chief Justice, then sitting, is now a

member of the Supreme Court. The authority, however, is none the less controlling because of that fact.

If a Federal court of equity has no jurisdiction to correct a practice in the case of reduced suffrage, from whence would come its jurisdiction in case the state legislature denied some citizens the right of suffrage altogether? If there exists a right to partially disfranchise, where will the Illinois Legislature stop? If the right exists in the Illinois Legislature to give one elector the voting power of eight electors in another district, then it would be difficult to hold the Illinois legislature may not disfranchise some elector entirely.

This disposition of the pending suit does not end the plain obligation of the Illinois legislature to perform its duty. Justice demands that it act. As one of the greatest of the 48 commonwealths that comprise the Union, she can not afford to become a leader in a new rebellion. A defiance based on the alleged right to discriminate between voters or between districts would not be a sound basis to start another rebellion.

A belated admission of error and desire to correct it are not an admission of weakness or incompetency. Rather it is a manifestation of bigness. Illinois will grow in the public opinion of other states and in her own esteem if she will frankly admit her past mistakes, perform her plain legislative duty and realign the Congressional districts on the basis of equality. She can not afford to wait the coming of force to compel its action. We have had enough of the tramp, tramp of armed forces.

It follows from what has been said that plaintiffs' suit must be and is hereby dismissed.